Good morning, your honors. Good morning. May it please the court, I'm Wendy Lasher and my associate Joanna Orr for the appellants. Do you want to save any time, Ms. Lasher? I would like to save five minutes. Five minutes, okay. This is obviously nominee day in this court. It is. And the vote's now going to be two to one because we believe that California does not recognize nominee theory. We analyzed the nominee cases, pages 20 to 21 of – no, I'm sorry. I think it was pages 20 to 21 of our brief. But in any way, we analyzed the nominee cases at some length in our brief. And I don't intend to speak about those cases. The court obviously is thinking about whether California law not recognizes nominee theory. But I do want to discuss how the court – the legal conclusions the court reached based on its findings. And I want to start with the – first of all, an interesting conclusion to the government's brief, which I think puts this case in a very odd light. The court looks at pages 67, 68 of the red brief because my clients argued that the entities that the district court discussed were not joined as parties and, therefore, these findings cannot attach. And the government seems to agree. It says, while the United States believes the district court's findings regarding the other entities created and controlled by the taxpayers would be relevant to such a suit, the district court's judgment cannot be used offensively to stop an entity that was not a party or in privity with a party to this case. For these reasons, the absence from this litigation of unspecified parties with unspecified claims to the properties does not require any aspect of the district court's judgments to be reversed. Let me ask you this. That's your 19A argument. I did not see any specific allegations about which of the entities involved in the transactions had enough of an interest in the property or the nature of those interests that you felt they needed to be joined. Did I miss something there? Well, I represent the Leeds and Forth who are the entities which own the real estate. Right. The entity that I think has the greatest interest here, although I don't represent it, is Hemet C. and the Children's Trusts. The Children's Trusts were separate entities? Separate beneficiaries? Forgive me. Let me state this in a different way. I did not understand the district court to be determining the validity of those entities' interest in the property. It just determined their interest in the properties vis-à-vis the Ballantynes. That's a little different question. And so would they need to be joined if the only question is whether or not they were nominees for purposes of the taxpayer's obligation? If it's very clear that these findings of fact are not binding on anyone except the taxpayers and the United States, then I assume not. But it's very unclear what use will be made of these findings in the future. I think the Court could take judicial notice that there is subsequent litigation pending between these entities and the government, and I don't know if the government is planning to do that. I don't represent anyone in those cases, and I don't know if the government is planning to contend that these are binding factual findings. But given the government's concession and given the nature of the procedural nature of this case, I think it would be very useful for this Court, at the very least, to make clear that the government's right. This decision is not binding on anyone except the taxpayers. Again, just to have you help me if I'm understanding what the position is correctly. My understanding, the government takes the position that the Valentines are the real owners here for purposes of being able to impose a tax lien. This is not a quiet title action. It's nothing like that. It is just to see whether the properties should be subject to a tax lien. Is that your understanding as well? My understanding is that my clients, who are the two limited partnerships, sued quiet title in the real estate, and the Court said effectively, we're not quieting title in the United or the government says, we're not quieting title in the United States, but we're not quieting title in your clients either because we think the Valentines, the taxpayers, really owe them, own them. Well, that, as to my clients, is not relevant. Somewhere in here it says we're not determining the priority of the liens. And I submit that if the government has a tax lien that is not effective, as to any of the creditors, I'm not sure what the use of that tax lien even is. Well, if there is a tax lien there, that's a matter of separate litigation, isn't there, in terms of priority? Exactly. And we'll ask the government when the government makes its appearance here. Is that the issue here, is what the priority is? Are you willing to stipulate that there is a tax lien on this property? Well, I think there is a tax lien. I'm not willing to stipulate anything because I think that my client's interests are superior to any tax lien. Okay. So, but I mean, is it your position that you're – that the Valentines have no interest in the property? The tax lien is of no benefit to anybody. I take no position one way or the other on that because the Valentines aren't my client and the government's not my client. My client's – Let me – I want to make sure. Maybe I feel like you've discussed this, but I'm trying to organize my thoughts on this. But it seems like your main argument is that the government must demonstrate that California recognizes the specific theory of nominee ownership. Is that – That is part of our – Okay. But is that what DREI requires? Because it seems like in DREI, under no theory of Arkansas property law, did the petitioner there have a property interest in his mother's estate, but the Supreme Court said he exercised control over that property and that was enough. Here it seems like the Valentines exercised the rights of possession, control, and use, all rights created under state law. And so I'm trying to figure out why isn't that enough under DREI? Thank you, Your Honor. That's not enough because, A, if we're going to start with the Valentines had an interest in the property under state law, we have to identify what interest was it. We submit it can't be nominee interest because California doesn't recognize a nominee theory of ownership. And so does your case rise and fall on that? No. If we find that there is a nominee theory under California law, do you – No, it does not, Your Honor, because – Why don't you lose if we find that? Because the way the district court reached its nominee conclusion in this case and the specific facts of this case was circular and erroneous. There are two aspects of that. First of all, we said, you know, this is not a fraudulent transfer case. It's not an alter ego case. We know that because the government told us at the beginning of the trial it was not asserting those theories. And then we have the district court concluding, this was in the summary judgment ruling, yes, the government said it wasn't pursuing those theories, but we can rely on those theories to reach the nominee conclusion. And we submit they can't have it both. The court can't have it both ways. The government can't have it both ways. Either it's a fraudulent transfer alter ego case or it's not. But you can't say we're finding nominee theory because of the fraudulent transfer and alter ego theories, because among many other things, in addition to notice, my clients would be entitled to a jury trial on the issue of fraudulent transfer. I'm trying to understand, because at times in your brief you seem to frame the issue as whether California authorizes nominee tax liens. But isn't the real question just whether California recognizes the nominee theory of ownership? We did both, Your Honor. First we discussed the California cases concerning the use of the phrase nominee, and that would be at pages, starting at pages 34 I misspoke earlier. And then we, I'm sorry, ending at page 34, starting at page 29 through 34, we discussed California nominee theory on other property theories. And then, secondly, we discussed nominee tax liens under California statutes. Would we really need to find a tax lien case from California? No, Your Honor. Absolutely not. What we were saying is there is no basis in California law, either not statutory or in the case law, in the common law, to establish nominee theory. Secondly, the district, as I said earlier, the district court did this circular and run around our client's procedural rights. Two questions for you. Number one, there are distinct differences between nominee analysis in real property versus other kinds of property. I know you discussed some of those cases, but there is a distinction there with the differences there not. There is a, I don't understand the question, Your Honor. I'm sorry. Okay. You cited some cases that talked about a nominee theory, not in the real property context, but dealing with other kinds of property. Well, there were things like, yeah, and is there a transfer of ownership and that kind of thing. There are cases dealing, the word nominee is. My question is, there's a difference there, a difference with a distinction. I don't think so, Your Honor. I think the problem is. The law recognizes, does it not, that you treat real property different than an automobile, for example. In terms of how you transfer title to it? Sure. Well, sure, you transfer title by a different mechanism. Now, let me ask you this second question. You say that the Court did an end-run, did an about-face, whatever you want to call it, proving a fraudulent transfer or an alter ego is another way, is a way of showing nominee, right? One. But that's one way of doing it, to show that that person really isn't the true owner, that it really is somebody else. Call it what you want. What else would it be other than a fraudulent transfer or an alter ego? Your Honor, I'm, I don't, I'm not going to disagree with that proposition, but the government explicitly told us early in the litigation it was not pursuing either of those theories. What did they tell you they were pursuing, then, if it wasn't? Nominee theory. They were pursuing nominee theory all along. And they're mutually separate and distinct. Yeah. Well, there is no nominee theory in California. The only California cases that say someone is the nominee are cases that take the procedural route of alter ego and, and fraudulent, and, and fraudulent transfer, and there is a right to jury trial in those cases. I keep repeating that because I think that's the important constitutional  Do you want to save some rebuttal time? But I'm going to make one more point and save less time. And that is there's one other thing wrong with the district court's findings, and that is that the court made an inconsistent finding on consideration that I think is fatal to its nominee finding. It found there was adequate consideration for the transfer at the time of the sale at the time of the transfer in that the exchange of limited partnership units for the real estate was adequate consideration in 1995. And where is that in the record? It is at, I will provide that to the court in the, when I rebuttal so I don't waste my time. Okay. Very good. It is there. I just can't, I don't have the page number on the tip of my tongue. Okay. But then it said subsequent things that happened in 1997 made the consideration inadequate. And I submit consideration is either adequate or not inadequate, or not adequate. It can't be adequate for a while and then become inadequate, because that is a circular approach to it. That's assuming the conclusion. Okay. Very good. Okay. We'll hear from the government. May it please the Court. Thomas Clark on behalf of the United States. Round two. Round two, yes. It's at page 31 of the district court's opinion. The matter that opposing counsel just referenced, right?  Page 31. Page 31. And what the court said there, and apparently under the partnership's view of things, in this world what could happen is, say, I and my wife could run up a tax liability, and we want to try to avoid paying taxes. My wife and I could create a partnership, and we could transfer our house to our partnership. And then to make it look real, we would sign a lease. So I might sign a lease on behalf of me and my wife, and my wife might sign a lease on behalf of her and me as the partnership, and we could pay rent to the partnership. And under the partnership's view of things, that's okay. And the IRS could not reach that house, because there was adequate consideration, which is that we received shares of the partnership units in return for the transfer of our house. Well, we submit that that's just too easy, and the law should not and does not count in this case. Isn't that really the issue of if the IRS or creditors were not involved, that there would be adequate consideration? Well, yes. But that's a separate issue from whether as a matter of state or certainly tax law, whether it is a fraudulent transfer or something under a nominee context, if the purpose of the transfer is to avoid paying monies that are owed to third parties. Is that correct? Yes. If they're real honest business reasons for a transaction like that, then, yeah, that's okay. That would pass muster. But, you know, in this case, the Court made just very thorough findings of facts about how all of these transactions involving these two real properties were done for the purpose of avoiding the tax liabilities. The partnerships point out in their briefs that the government did not put on any witnesses at the trial. You know, 15 days of trial before the district court judged, it was only the partnerships' witnesses that were called. And, you know, the district court concluded after hearing the 15 days of trial that there was just an abundance of evidence that the taxpayers, the Ballantynes in this case, just went through this complex scheme of these real estate transactions in order to avoid the tax liabilities. And there were some 13 or 15 different entities that were involved in these real estate transactions. And the district court made a finding that it did not hear any evidence that any of these entities were involved in any true independent business activity. And I think that is a very key finding in this case, that everything was done here to avoid paying these tax liabilities. And I think all of the district court's findings in that regard are very well supported by the record and should not be disturbed on appeal. What about your opponent's comments about the alter ego and fraudulent transfer about Faith's aunt, that she was denied a jury trial? Well, I mean, earlier on in the litigation, there were cross motions for summary judgment. And the district court issued an opinion on summary judgment where it made that reference. But then, you know, the litigation continued, and there was a 15-day trial. And then the court issued its 38-page opinion after the trial, and there was no mention of fraudulent conveyance. There the court went solely off on nominee. And, you know, I do want to emphasize that, you know, nominee, fraudulent conveyance, alter ego, resulting trust, constructive trust, those are all remedies that are available for creditors who, you know, are trying to collect from perhaps recalcitrant debtors. And they have many overlapping features, but they are not identical. And the First Circuit recognized that in its opinion last summer in the Dalton case where the owners, nominal owners of property were making the very same argument that the partnerships are here, and that is that the court had to look at main resulting trust or constructive trust law and decide the case under those theories. And the First Circuit said, no, that's not right. The government was not asserting a resulting trust or constructive trust in that case. It was asserting nominee, which is a different legal theory. And the discussion in Dalton is at 682F3rd at page 158 of the opinion. That very argument was rejected by the First Circuit, and we think it should be rejected by the court. This, what you just talked about with Dalton, as I have looked at, looks like that Holman and the tenth spots in the sixth and then some district court cases follow a similar format. Is that your understanding as well? Follow a similar format. In other words, the same thing that Dalton, the same approaches to the nominee theory and the like. Well, yeah. I think that Holman and spots in those cases, the courts are looking to related theories as to which, you know, that might be informative in the context of the nominee analysis. What about Ms. Lasher's comment that her client would be entitled to a jury trial? I'd have to look that up. I'm not certain about that. I don't know the answer to that question, whether they are or not. Okay. Let me ask you about the Eleventh Circuit.  Yes, Your Honor. It seems like in that case, the Eleventh Circuit held that the government could not levy on the delinquent taxpayer's alter ego because it did not meet Florida's very stringent three-part test for alter ego piercing, which apparently focuses primarily on fraud rather than control over the relevant property. Is that the right result? Well, obviously, we lost that case. So we did not think the court came out with the right result in that case. But, no, that was an alter ego case. It's not a nominee case. You know, and the court looked at Florida law, which is not the same as nominee law in California. So, I mean, I think it's plainly distinguishable. Well, shouldn't or shouldn't a court just look to the level of control the taxpayer asserted? Well, that is – I mean, some courts have suggested that that might be the most important factor. But, again, as I said earlier today, it's really a totality of the circumstances approach. And several of the courts said, you know, the degree of control may be the most important factor, and the degree to which the taxpayer or the debtor continues to benefit from the property or exercises control over, you know, the transactions related to the property. And that's the Drey case, right? It's now basically – Yeah. Now, the Drey was not a nominee case. You know, I want to make that clear. And so, you know, although for the reasons we said in our brief, we do maintain, you know, that the California law does recognize a nominee theory of ownership and it has applied that doctrine in a number of cases that we discussed in our brief. You know, we also think that it's really a federal standard that applies to determine nominee ownership of property. Now – Don't you have to look to the states first to determine what the rights are for the taxpayer and the property that the government seeks? No. Obviously, that's the general rule when you're dealing with federal tax means. But I will say this. I mean, the Supreme Court has never had a nominee case before. Now, it has had an Alter Ego case. And again, there are overlapping features of nominee and Alter Ego. And the Alter Ego case the Supreme Court had was GM Leasing Corporation. And in that case, the court said that the petitioner in that case, GM Leasing, was the taxpayer's Alter Ego. It had no countervailing effect for purposes of his federal income tax. And in support of that statement, it cited two cases, Griffiths v. Commissioner Higgins v. Smith. Now, you look at those cases, Griffiths v. Commissioner says that we cannot too often reiterate – this is the Supreme Court saying this – we cannot too often reiterate that taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed. So that's the Supreme Court in the Alter Ego case. And we think that Dry was not an Alter Ego case, but the court did say in Dry that the ultimate issue, whether the taxpayer has a beneficial interest in property, is governed by federal, not state, law. And I think the bottom line in these nominee cases is that the taxpayers really go through sometimes shorter lengths, sometimes greater lengths, to create a legal fiction that they are not the owners of the property by placing title in the name of somebody else. I guess what I struggle with is, as the Supreme Court pointed out, this is ultimately a matter of federal law, but they have also made it clear, as indeed have all of the circuit courts who have weighed in on it, that you have to look at the state law first to see whether there's a recognition. Everybody's done it on a case-by-case basis, fact-by-fact basis, because even though the service would like a just blanket statement that you kind of ignore the state law, the fact is there are certain laws that are there for the protection of people even in a debtor-creditor relationship. You have bankruptcy laws and all that sort of thing as well. In the real estate concept, it's a little easier to police, if you will. On the other hand, when you get into partnerships and things of that nature and offshore partnerships, it gets pretty murky because the reality is, even if the California Supreme Court agrees with nominee ownership, it's more likely in the concept of real estate and not necessarily in the broad scope of things. Given that fact, how do we apply it in this particular case, where you've really got at least two major partnerships? I understand the service's position. I understand the six-factor test. Is it your position that all we really need to find here is if you apply the six factors and if the state even recognizes as we project that it would, the concept of nominee ownership, all we need to do is apply the six factors and under the totality of the circumstances, if there's been evidence that the taxpayer has not been straight up on the thing, then the government wins. Is that your position? Well, in this case, obviously, it does deal with real estate and it is our position in this case that the partnerships are the nominee. How far it extends beyond that, I mean, I know the previous case dealt with bank accounts, but I think that the same considerations would come into play, which is really who's exercising control over the property. Again, I think the courts have recognized that that's really probably the primary or most important consideration and these other factors. So the alter ego cases, obviously there's a certain amount of control issues there, but there are fairly well-established state law concepts for alter ego, particularly in the business area and LLCs and corporations and the like. Is it your position that the nominee theory, if taxes were involved, would supplant state alter ego theories in corporate and partnership structures, for example? Well, depending on how the court comes out in this case, whether it agrees with our main argument that a nominee is governed by a federal standard or you look to state laws to determine it. Right. I mean, if the court determines that you look to state laws to determine nominee, then it wouldn't supplant any state's law for alter ego because, like I said, although there are overlapping features. If the court were to recognize, for example, and I'm speaking hypothetically only, if we were to say if this question were presented to the California Supreme Court, we believe that it would recognize that there's a nominee status in this situation, but that we determine whether it exists by applying the six factors under federal law. Is that the concept that the service field is appropriate? Or you're asking for more. You're just saying you don't care about state law. There's six factors, and that's all it is. Yeah. Our first primary argument is that the court should all across the country look at the six factors. Because you want uniformity. For uniformity purposes. And now we recognize that because of language and drawing, some of the other cases that the court might well not agree with that argument but instead say that you look to a state's law on nominee. And then you have to do just as this court held in the Adam case earlier. We haven't held anything in the Adam case. Well, in the first appeal in Adam, when you send it back, you have to look at state law. And if state law has not really fully developed the contours of the doctrine yet, the district court has to make its best prediction as to how the California Supreme Court would determine nominee ownership. And I think that the courts below, both in this case and in Adam, did that by saying, well, in other contexts, the California Supreme Court has looked at federal district courts within California, and if there is a consensus among those courts, then it gives great weight to those decisions. And I think that's exactly what the district court did in the cases that you've heard this morning. It, you know, made the prediction that the California Supreme Court would get great weight to those decisions and would apply those factors in determining nominee ownership, which, you know, we maintain, you know, from beginning to end that the California cases do recognize nominee ownership of property, but it's just never filled in all of the detail. I understand.  All right. Thank you for your argument. We'll hear rebuttal. You have two minutes and 56 seconds. A complex scheme does not mean a sinister scheme. The government seems to be picking alter ego cases when they're helpful and picking non-alter ego cases when they're not helpful. I heard, I think I heard my colleague argue that Maine law is distinct from California law with respect to the Dalton case, but with respect to the Florida case, Florida law, California law should all be treated the same. So your position is, I gather, that, you know, we just can't ignore these distinctions that state law provides, such as alter ego doctrines, other special protections that might be available with respect to particular kinds of property and so on. And yet the Supreme Court's been pretty clear, I think, that federal law does trump in this, does it not? The Supreme Court said that if the state recognizes a property interest, federal law controls whether that property interest may be leaned. Yes. But it made very clear that if the state recognizes the property interest, and so have the other circuits. One other comment. Counsel spoke about all these entities with allegedly no legitimate business activities. The activities of any of these other entities were not before the Court. That's what we started out discussing. So we can't leap to that conclusion, because before we decide whether those entities and those transactions were legitimate, we'd have to have those entities. So is it your position, and this may seem unorthodox, but you heard these other cases. We got people in other countries and all that sort of thing. Is it your position that in order for a district court to make a determination regarding a federal tax lien, that they would have to join the Turks and Caicos of bank accounts and I don't think that's necessary, but I don't think they can affect the interests that are controlled by someone outside the country. Right. They can't affect the interest in the sense of legally saying this is what you, Turks and Caicos, have got. But they can determine, can they not, whether the taxpayer has an interest in the property and lien it. Is that correct? Yes. But as between the taxpayer and the service, that just doesn't really help any because there will have to be some sort of engagement. Well, it's just the first step, of course. But it does determine at least that there is such an interest remaining there, regardless of the title, and then you go from there. The taxpayers were even before the court. In this case, only my clients, the two partnerships, were before the court. Only at the conclusion of the case did the court determine that the taxpayers were really before the court. So I don't think the service is going about these things in the right way. Maybe they're just not litigating in the right order. Meanwhile. You might want to be a consultant to them. I'm sure they'd be delighted to have you. This particular decision, whatever the ultimate rule the court reaches, and I hope it's a rule that brings consistency to the area, this particular judgment must be reversed for all the reasons we've talked about in our briefs. Okay. Thank you very much. We very much appreciate the argument of the government and the other side. These cases are very complex, as you can appreciate, and we take it very seriously. We will do our best. Thank you. The case of Fourth Investment, LP and Leeds, LP versus the United States is submitted.
judges: Zouhary, Smith, Murguia